# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALVERN INSTITUTE FOR PSYCHIATRIC AND ALCOHOLIC STUDIES, INC., Individually and on behalf of all others similarly situated | : <br> : CIVIL ACTION <br> : <br> : <br> : |
| Plaintiff | : NO. 16-CV-4772 |
| vs. | : |
| MAGELLAN HEALTHCARE, INC., ET. AL. | : |
| Defendants | : |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                             **August 8, 2018**

This civil action is presently before us on Motion of Plaintiff for Class Certification. As we explain in the paragraphs which follow, the Motion shall be denied.

### Factual Background

Plaintiff Malvern Institute for Psychiatric and Alcoholic Studies ("Malvern" or "Malvern Institute") is an operator of addiction treatment programs at various locations throughout Southeastern Pennsylvania, including several inpatient residential (non-hospital) facilities. Defendants Magellan Healthcare, Inc., Magellan Behavioral Health of Pennsylvania, Inc., Magellan Behavioral Health Systems, LLC, and Magellan Health, Inc. ("Magellan") are health benefits managers and

administrators overseeing, *inter alia*, the behavioral health benefits for those federal employees, retirees and their families who enroll in the Federal Blue Cross Blue Shield Service Benefit Plan in certain areas of the country, including central and southeastern Pennsylvania pursuant to the Federal Employees Health Benefits Program ("FEHBP").

In its complaint, Plaintiff avers that both the Federal Blue Cross Plan and Magellan are required to comply with the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") and its implementing regulations (42 U.S.C. §§300gg-26, 29 U.S.C. §1185a and 26 U.S.C. §9812). In essence, these laws mandate that in the case of group health plans which provide both medical and surgical benefits and mental health or substance use disorder benefits, there be parity between the two categories of benefits. See, e.g., 42 U.S.C. §300gg-26(a); 26 U.S.C. §9812(a). Stated otherwise, MHPAEA prohibits health plans and their administrators from imposing restrictions and treatment limitations on behavioral health/substance abuse benefits that do not exist for or are more stringent than those imposed upon physical health benefits. By this action, Plaintiff alleges that Defendants fail to comply with MHPAEA in their management and administration of the substance use disorders and behavioral health benefits for Federal Blue Cross Plan members and participants, specifically with regard to the administration of inpatient, non-hospital

2

residential addiction treatment benefits by imposing a series of utilization review barriers that are not present for and are not applied to, physical health benefits. Plaintiff seeks a declaratory judgment that Defendants' actions violate both the MHPAEA and its contract with Plaintiff and is asking to represent not only itself but also a proposed class of facilities which it defines as follows:

> All inpatient non-hospital (residential) addiction treatment facilities in Pennsylvania that (a) provided or sought to provide residential addiction treatment to Federal Blue Cross Plan members whose behavioral health benefits were or are managed by Magellan and (b) were unable to obtain preauthorization or reimbursement for such treatment.

Insofar as the period for the taking of class discovery has now closed, Plaintiff has filed the motion for class certification which is presently before us.

### **Rule 23 Pre-requisites for Class Certification**

A creation of Fed. R. Civ. P. 23, the class action has been described as "an ingenious procedural innovation that enables persons who have suffered a wrongful injury, but are too numerous for joinder of their claims alleging the same wrong committed by the same defendant or defendants to be feasible, to obtain relief as a group." Mielo v. Steak 'N Shake Operations, Inc., No. 17-2678, 2018 U.S. App. LEXIS 20793 at *21 (3d Cir. July 26, 2018)(quoting Eubank v. Pella Corp., 753 F.3d 718, 719 (7th Cir. 2014)). Or, as the Supreme Court itself has observed, "[t]he class action is 'an exception to the usual rule that litigation

is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432, 185 L. Ed.2d 515, 521 (2013)(quoting Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S. Ct. 2545, 61 L. Ed.2d 176 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." Id.(quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed.2d 374, 390 (2011)).

"'A class certification decision requires a thorough examination of the factual and legal allegations'" such that "[c]lass certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." In re Hydrogen Perozide Antitrust Litigation, 552 F.3d 305, 309 (3d Cir. 2008)(quoting, *inter alia*, General Telephone Company of Southwest v. Falcon, 457 U.S. 161, 102 S. Ct. 2364, 72 L. Ed.2d 740 (1982) and Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001)). Specifically, under Rule 23(a),

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

It has been said that "[t]he requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). "While numerosity addresses the first of these concerns, *i.e.*, necessity, the last three requirements help determine whether the class action can be maintained in a fair and efficient manner." Id. Thus, it is axiomatic that "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Dukes, 131 S. Ct. at 2550, 180 L. Ed.2d at 388-389(quoting, *inter alia*, East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed.2d 453 (1977)).

In addition to initially satisfying the foregoing four prerequisites of Rule 23(a), (otherwise known as numerosity, commonality, typicality and adequacy of representation), additional requirements must then be satisfied depending on whether a plaintiff seeks certification under Rule 23(b)(1), (2) or (3). Reyes v. Netdeposit, LLC, 802 F.3d 469, 482 (3d Cir. 2015)(citing Marcus v. BMW of North America, LLC, 684 F.3d 583, 590 (3d Cir. 2012)). Under Rule 23(b):

> A class action may be maintained if Rule 23(a) is satisfied and if:

5

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

"Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." Hydrogen Perozide, 552 F.3d at 307; Gonzalez v. Corning, 317 F.R.D. 443, 489 (W.D. Pa. 2016).

Analysis must be rigorous and the burden of proof rests on the movant. Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 353, 354 (3d Cir. 2013)(citing, *inter alia*, Hydrogen Peroxide, 552 F.3d at 316, n. 14). "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." Id. As further summarized by the Third Circuit in Reyes, 802 F.3d at 485,

> it is now clear that the District Court must (1) conduct rigorous analysis, (2) review all avenues of inquiry in which it may have doubts (even if it requires reviewing the merits) in order to (3) be satisfied and (4) make a definitive determination on the requirements of Rule 23, or even (5) require that a plaintiff demonstrate actual, not presumed conformance with Rule 23 requirements.

With these general principles in mind, we now consider each of the Rule 23(a) requirements *seriatim*.

*Numerosity*

As noted above, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Hayes, 725 F.3d at 356; Gonzalez, 317 F.R.D. at 490. "[A] party seeking class certification must be prepared to prove that there are *in fact* sufficiently numerous parties - mere speculation as to the number of class members, 'even if such speculation is a bet worth making,' cannot support a finding of numerosity." Hayes, at 357 (quoting Dukes, 131 S. Ct. at 2551 and Marcus, 687 F.3d at 596). This is because, as Marcus makes clear, Plaintiff "must show by a preponderance of the evidence that there is a reliable and

7

administratively feasible method for ascertaining the class; a petition for class certification will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact finding." Hayes, 725 F.3d at 356 (citing Marcus, 687 F.3d at 593-94 and Hydrogen Peroxide, 552 F.3d at 307.) "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-227 (3d Cir. 2001); Stanford v. Foamex, L.P., 263 F.R.D. 156, 166 (E.D. Pa. 2009). Further, although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members, in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties and geographic areas actually covered by the class definition to allow a district court to make a factual finding." Hayes, at 357(quoting Marcus, at 596-597); Montgomery County v. Merscorp, Inc., 298 F.R.D. 202, 209 (E.D. Pa. 2014). "Only then, may the court rely on common sense to forgo precise calculations and exact numbers." Hayes, id.

In this case, Plaintiff avers that numerosity is satisfied

8

because the proposed class consists of at least 27[1] institutions which received some form of notice (either in the form of an email or checklist of requirements necessary to obtain authorization for residential addiction treatment) from Defendants. Plaintiff goes on to allege that "[i]f left unchecked, this number will grow as Magellan continues to violate the MHPAEA through its illegal requirements." (Pl's Brief in Support of Motion for Class Certification, pp. 17-18). Defendant submits that Plaintiff's proposed class is either 11 (based upon its proposed class definition of those inpatient non-hospital (residential) addiction treatment facilities in Pennsylvania that (a) provided or sought to provide residential addiction treatment to Federal Blue Cross Plan members whose behavioral health benefits were or are managed by Magellan) or at most 25 (if any facility that sought authorization to provide for FEP benefits regardless of whether or not they had a contract with Magellan was included).

In resolving this issue, we initially note that our review of the record evidence reflects a potential class of at most, 22 members. (See, e.g., Pl's Exhibit "G," p. 18; Pl's Exhibit "I," pp. 3-6; Pl's Exhibits "J," "K," and "L"). Even accepting

---

[1] Although Plaintiff's initial Brief in Support of Motion to Certify the Class asserts that the proposed class consists of 29 members, its Reply Brief amends that number to 27. (See, Pl's Reply Brief in Support of Motion for Class Certification, p.3).

Plaintiff's claim that the putative class is composed of some 27 members, however, it is clear that the proposed class falls below the presumptive threshold of 40 such that we turn now to consider other factors which may be relevant to the numerosity question. Feret v. CoreStates Financial Corp., Civ. A. No. 97-6759, 1998 U.S. Dist. LEXIS 12734 at *17 (E.D. Pa. Aug. 18, 1998)(citing 1 NEWBURG ON CLASS ACTIONS §3.03, at 3-10 (3d ed. 1992) and Zeidman v. J. Ray McDermott & Co.,Inc., 651 F.2d 1030, 1038 (5th Cir. 1981)). "This non-exhaustive list includes: judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." In re Modafinil Antitrust Litigation, 837 F.3d 238, 253 (3d Cir. 2016). And, while all of these factors are relevant, "not all are created equal." Id. "Instead, both judicial economy and the ability to litigate as joined parties are of primary importance." Id.

Here, we are faced with a dearth of evidence or argument relative to these factors. While we do not doubt Plaintiff's assertion that the injunctive nature of the relief sought effectively makes the proposed class more numerous (see, Weiss v. York Hospital, 745 F.2d 786, 808 (3d Cir. 1984)), this does not obviate the fact that "[t]he Court's 'inquiry into

10

impracticability of joinder should be particularly rigorous when the putative class consists of fewer than forty members.'" Bland v. PNC Bank, N.A., Civ. A. No. 15-CV-1042, 2016 U.S. Dist. LEXIS 189220 at *26 (quoting Modafinil, 837 F.3d at 250)).

It has been said that judicial economy "looks to the administrative burden that multiple or aggregate claims place upon the courts and includes 'any efficiency considerations regarding the joinder of all interested parties that the district court deems relevant, including the number of parties and the nature of the action' and 'docket control.'" Id, at *28 - *29(quoting Modafinil, 837 F.3d at 254, 257). "The focus is on whether the class action mechanism is substantially more efficient than joinder of all parties" and "[t]he district court's close familiarity with how a case has progressed makes it best suited to decide if certification is preferable over joinder." Id,(quoting Id.).

On these points, Plaintiff produces no evidence whatsoever and makes no argument. Regardless, given that all of the proposed class members are participating providers in the FEP Blue Cross/Blue Shield Plan located within the confines of either the Independence or Capital Blue Cross service areas, they are all in relatively close proximity to one another in the southeastern/central portions of Pennsylvania such that they are for all intents and purposes geographically clustered. As such,

joinder in this action would be considerably less onerous than it would be if the potential plaintiffs were scattered throughout the country.

Similarly, in view of the proposed class definition, identification of any future claimants would seem to be, in the opinion of this Court, a relatively simple process with the result that if any such claimants were interested in joining this litigation, they would find it fairly easy to do so.

Additionally, notwithstanding that this case was filed nearly two years ago, the docket reflects that the only discovery taken and pretrial proceedings to date have related to the filing and disposition of Defendants' motion to dismiss and this motion for class certification. Thus we conclude that any claimant that might wish to join as a plaintiff to this action would suffer no real prejudice or disadvantage by the decision to enter this suit now. And, again in the absence of any showing to the contrary, this Court is unable to find any serious administrative burdens or barriers to joinder of all of the parties in lieu of this matter going forward as a class action, or that any of the potentially new plaintiffs would be financially burdened any more than the present plaintiff.

Finally, we also cannot find that granting this case class status would prove any more efficient given the current stage of the case's proceedings. If anything, in view of the notice and

other requirements inherent in class action matters, it is entirely possible that certifying this case as a class action would have the unwanted effect of further delaying its litigation to conclusion. For these reasons, we do not find that numerosity has been satisfied here.

## **Conclusion**

In view of our inability to find that the first requirement of Rule 23(a) (numerosity) has been satisfied, we see no need to discuss the other three requirements of 23(a) or commence an analysis under Rule 23(b). The Plaintiff's Motion for Class Certification shall therefore be denied pursuant to the attached Order.